Filed 11/4/25 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS SEPULVEDA MELGOZA,<br><br>    Defendant and Appellant. | H050387<br>(Monterey County<br>Super. Ct. No. 21CR008177)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 7, 2025 be modified as follows:

Subheading II.C.1. on page 14 is deleted.

Part II.C.2., beginning on page 17 and ending on page 18, is deleted in its entirety and replaced with the following paragraph:

As we have found the uncharged acts evidence was properly admitted under Evidence Code section 1108, we need not reach defendant's arguments regarding admissibility of the same evidence under Evidence Code section 1101, subdivision (b). (*People v. Britt* (2002) 104 Cal.App.4th 500, 506.)

There is no change in the judgment.

The petition for rehearing is denied.

Dated: _____

_____
GREENWOOD, P.J.


_____
GROVER, J.


_____
LIE, J.

H050387
*People v. Melgoza*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| THE PEOPLE, | H050387 |
| --- | --- |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 21CR008177) |
| v. | |
| CARLOS SEPULVEDA MELGOZA, | |
| Defendant and Appellant. | |

A jury convicted defendant Carlos Sepulveda Melgoza of forcible rape of a minor, forcible oral copulation of a minor, unlawful intercourse, and incest. The charges related to an incident involving defendant and his 17-year-old immediate relative. Defendant argues on appeal that insufficient evidence supports certain counts. He contends the trial court improperly granted a prosecution request to amend the definition of force in the pattern jury instructions, and allowed testimony about uncharged misconduct that was not admissible under Evidence Code sections 1101 or 1108. Defendant argues his trial counsel provided prejudicially ineffective assistance by not objecting to admission of defendant's statements during a pretext call; to testimony by a peace officer about the victim's veracity; and to expert testimony about the psychology of child sexual assault victims. He argues his trial counsel also rendered ineffective assistance by asking the child psychology expert a question that led to damaging testimony.

We conclude that granting the prosecution request to amend the pattern jury instructions was erroneous and prejudicial. The judgment must therefore be reversed and the matter remanded for possible retrial on the forcible rape and forcible oral copulation counts. We find all other asserted errors harmless, both individually and cumulatively,

such that defendant's unlawful sexual intercourse and incest convictions will remain undisturbed.

## I.    TRIAL COURT PROCEEDINGS

The operative amended information charged defendant with forcible rape of a minor over 14 years of age (Pen. Code, § 261, subd. (a)(2); count 1); forcible oral copulation of a minor over 14 years of age (Pen. Code § 287, subd. (c)(2)(C); count 2); unlawful sexual intercourse (Pen. Code, § 261.5, subd. (c); count 3); and incest (Pen. Code, § 285; count 4).  (Unspecified statutory references are to the Penal Code.)  All charges involved a single victim, whom we will refer to as Jane Doe.

### A.  TRIAL EVIDENCE

#### 1.  Doe's Testimony About the Charged Offenses

Jane Doe was living with her grandparents in September 2019 when she was 17 years old.  She had a bedroom to herself.  Defendant was a truck driver and would stay at the house frequently.  He usually slept in the living room.

Defendant called Doe's aunt one night in September 2019 and asked for a ride from a gas station.  Doe picked him up and brought him home to spend the night at the house.  At bedtime, defendant asked Doe if he could sleep in her room.  She agreed, and he set up a sleeping area on the floor next to her bed.

Doe went to bed wearing a tee shirt and underwear.  Doe felt defendant crawl into her bed after she turned off the lights.  Defendant wrapped an arm and a leg around Doe.  This made Doe feel "scared and anxious."  Doe did not feel like she could get away because defendant was much larger.  Defendant touched Doe's breasts over her shirt.  He moved the blanket and took off Doe's shirt and underwear.  He also took off his underwear.  Defendant spread Doe's legs and put them on his shoulder.  He performed oral sex on Doe, then arched his back and attempted to penetrate Doe's vagina with his penis.  His penis rubbed in between her "vagina lips."  She could feel his penis spread the labia apart.  Defendant eventually stopped, cleaned Doe and himself with a shirt, and

2

returned to the floor to sleep. Defendant did not say anything to her during the incident. Doe felt "scared, confused and frozen." The incident lasted about three minutes.

Doe felt "broken, destroyed, [and] confused" afterward. She took a shower, put on multiple layers of clothes, and got back into bed. Defendant said, "I'm sorry." Doe typed a note in her phone stating defendant "just raped me," then locked the note. The next morning defendant asked her not to tell anyone about what happened. He texted her while she was at work, claiming that "he was on pills" and that he did not know what he was doing.

### 2. Doe's Testimony about Uncharged Offenses

Doe testified over defense objection about two previous incidents involving defendant. The first occurred when she was eight years old and they were staying at a casino in Yuma, Arizona. Defendant and Doe were lying in bed on their backs next to each other. Doe's mother and two other children were also on the bed, farther from defendant. Defendant grabbed Doe's left hand and placed it on his penis on top of his clothing. She flinched, and he moved so that her hand slid off.

The second incident occurred several weeks before the charged offenses. Defendant picked up Doe from Calexico in his semi-truck to drive her to Salinas. Doe was resting in the truck's small sleeping quarters when she noticed defendant had stopped the truck. Doe felt "ambush[ed]" as defendant joined her in the sleeping quarters. Defendant rolled over next to her and held her close to his body. Defendant was behind Doe, with his right leg over her legs and his right arm on top of her. Doe found that behavior odd because she did not usually cuddle with defendant. He stayed there for about 20 minutes before resuming the drive.

### 3. Investigating Officer's Testimony

A Salinas police officer testified about his investigation of defendant's case. The officer testified that no Sexual Assault Response Team examination was ordered because Doe reported the incidents involving defendant two years after they were alleged to have

3

occurred.  The officer obtained a statement from Doe.  She also agreed to participate in a pretext call, which he described as a call in which the "victim contacts the suspect where they have no idea that law enforcement has been involved, and we try to get a statement to see, first of all, how they react to the allegation."  He also noted officers can "guide questions towards the investigation to make the case a lot stronger if it did occur."  Doe made two pretext calls to defendant, which were admitted into evidence and played for the jury.

Defendant challenges on appeal the following statements the investigating officer made when explaining why he asked Doe to make the second pretext call:  "Based off of how the victim was emotional, I felt that she wasn't lying about what had occurred. [¶] Based off the statement, the long, drawn-out periods and deep breathing from the suspect, it was obvious something had occurred, and that's why I felt it was important to try to do another phone call, if feasible."

### 4.  Prosecution Expert Testimony

A clinical psychologist testified over defense objection as an expert on the "psychology of a child sexual assault victim in general."  He made clear that he had not reviewed any evidence about defendant's case and that he had no opinion on whether Doe was assaulted.  He instead discussed "misperceptions or myths that people in the general public have about child sexual assault in general or about child sexual abuse victims."  He testified that it is common for child sexual abuse victims to delay reporting the abuse.  Child sex abuse victims often do not "outwardly display ... fear or [ ] anxiety" and attempt to look as normal as possible.  They often remain in contact with their abuser.  Some child sex abuse victims dissociate while the abuse is occurring, and "they might stare off, they might look off in the corner."

### 5.  Defendant's Testimony

Defendant testified in his own defense.  He had been a long distance truck driver for 20 years, which meant he was frequently away from home.  He denied any

4

wrongdoing. He testified that on the night the charged offenses were alleged to have occurred, he arrived at the house in the evening and had dinner with Doe and others. Defendant testified that Doe asked him to sleep in bed with her that night. He initially declined because he always slept on the living room couch. He eventually agreed to sleep in her bedroom on the floor. He "took five Advil PMs," which usually "knocks him out." He denied getting into the bed at any point, and also denied engaging in any sexual acts with Doe.

As to the uncharged offenses, defendant acknowledged that his family used to stay at a casino hotel in Yuma. But he denied that the family ever slept in the same bed. He denied ever putting Doe's hand on his penis. He also confirmed that he drove Doe to Salinas in September 2019. He testified that at a truck stop he briefly tried to sleep next to Doe in the sleeping area of the truck. He stated, "I put my hand over [Jane Doe], but I just didn't feel good – it felt very uncomfortable." He testified that he left the sleeping area after about a minute and slept in the driver's seat instead.

## B. MODIFIED JURY INSTRUCTIONS

As relevant to defendant's appellate arguments, the trial court granted a prosecution request to modify the pattern instructions related to the force element of counts 1 and 2 to add: "Force also includes the physical movement and positioning of the female's body to accomplish the act."

The trial court also gave a modified version of CALCRIM No. 1193. The modified instruction was titled, "Testimony on Child Sexual Abuse Victims Psychology/Behavior," and provided: "You have heard testimony from [a clinical psychologist] regarding the psychology or behavior of child sexual abuse victims in general. [¶] [The clinical psychologist's] testimony about the psychology or behavior of child sexual abuse victims in general is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged. [¶] You may consider this evidence only in deciding whether or not Jane Doe's conduct

5

was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony." (Some capitalization omitted.)

## C. VERDICT AND SENTENCING

The jury found defendant guilty as charged. He was sentenced to 17 years in prison, consisting of: the middle term of nine years for forcible rape of a minor 14 years of age or older (§§ 261, subd. (a)(2), 264, subd. (c)(2)) and a fully consecutive middle term of eight years for forcible oral copulation of a minor 14 years of age or older (§ 287, subd. (c)(2)(C)). Punishment for the other two counts was stayed (§ 654).

## II. DISCUSSION

## A. AMENDED INSTRUCTION DEFINING FORCE

The prosecution asked that the following language be added to the instructions defining the elements of counts 1 and 2: "Force also includes the physical movement and positioning of the female's body to accomplish the act." The prosecutor argued the special instruction was "closely associated with the language in" *People v. Thomas* (2017) 15 Cal.App.5th 1063 (*Thomas*). Defense counsel clarified that she "didn't join in that [request], but I don't disagree." The trial court granted the request.

### 1. The Special Instruction was Legally Incorrect

The federal constitution "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*United States v. Gaudin* (1995) 515 U.S. 506, 510.) Jury instructions that misdescribe or omit an element of an offense violate the federal constitution. (*Neder v. United States* (1999) 527 U.S. 1, 10 ["In both cases— misdescriptions and omissions—the erroneous instruction precludes the jury from making a finding on the *actual* element of the offense."].) Although defendant did not object to the special instruction at trial, " '[w]hether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim.' " (*People v. Ngo* (2014) 225 Cal.App.4th 126, 149; § 1259.)

6

Our Supreme Court has observed that a correct statement of law in an appellate opinion unrelated to jury instructions is often not a sound basis for a special jury instruction.  The court "strongly caution[ed] that when evaluating special instructions, trial courts carefully consider whether such derivative application is consistent with their original usage."  (*People v. Colantuono* (1994) 7 Cal.4th 206, 221, fn. 13 (*Colantuono*), superseded by statute on another point as stated in *People v. Conley* (2016) 63 Cal.4th 646, 660, fn. 4.)  We review claims of instructional error de novo, considering "whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution."  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Both the forcible rape and forcible oral copulation counts required the prosecution to prove beyond a reasonable doubt that defendant accomplished the offense "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§§ 261, subd. (a)(2), 287, subd. (c)(2)(C).)  Neither party disputes that the pattern jury instructions for those offenses correctly define an offense as being "accomplished by force if a person uses enough physical force to overcome the [victim's] will."  (See CALCRIM Nos. 1000, 1015; *People v. Griffin* (2004) 33 Cal.4th 1015, 1023–1024 ["it has long been recognized that 'in order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' "].)

The trial court's modified instruction unequivocally informed the jury that "[f]orce also includes the physical movement and positioning of the female's body to accomplish the act."  The modification is legally incorrect because it suggests that physical movement will always satisfy the force element for the charged offenses.  Although evidence of physical movement can be sufficient to satisfy the force element, it does not follow that physical movement *always* satisfies the force element.  As the finder of fact,

7

the jury had to determine not only whether defendant physically moved or positioned Doe's body but also whether any force used by defendant was sufficient to overcome her will. We find it reasonably likely that the added language caused the jury to misapply the law by believing its only task was to determine whether defendant moved or positioned Doe, and not whether the movement met the proper legal definition of force. The Attorney General counters that the instruction was legally correct because it "merely provided an example of one way in which the jury could find force." But the special instruction was not so phrased. The modified instruction did not inform the jury that physical movement may constitute force, but rather that physical movement *does* constitute force.

Relying on *Thomas* and other cases examining evidentiary sufficiency, the Attorney General argues that "a jury may properly convict based on finding this level of force." (See *Thomas*, *supra*, 15 Cal.App.5th at pp. 1071–1072 [finding sufficient evidence of force where Thomas "lifted [the victim] up on the sink, positioned her to face the mirror, and massaged her genitals with his hand before penetrating the vagina"].) We acknowledge that the level of force those authorities describe can be *sufficient evidence* to support a conviction. But the requested language was not a correct statement of the law as an *instruction* to the jury.

We caution courts and counsel against the impulse to transmute observations by a reviewing court concerned with substantial evidence into definitional statements of law. Although such observations may have definitional value when a reviewing court *reverses* despite the deferential standard, the fact-driven nature of a deferential *affirmance* based on substantial evidence does not lend itself to broadly applicable holdings on the elemental requirements of a charge.

We also echo the Supreme Court's caution against the assumption "that a correct statement of substantive law will provide a sound basis for charging the jury." (*Colantuono*, *supra*, 7 Cal.4th at p. 221, fn. 13.) "The discussion in an appellate decision

8

is directed to the issue presented" and the reviewing court "generally does not contemplate a subsequent transmutation of its words into jury instructions and hence does not choose them with that end in mind." (*Ibid.*) As we have noted, the *Thomas* court was concerned with evidentiary sufficiency rather than instructional correctness. In the context of its sufficiency review, the court observed: "The jury had to find beyond a reasonable doubt defendant used 'enough physical force to overcome the other person's will.' (CALCRIM Nos. 1015, 1045.) 'Force' includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude. (*People v. Young* (1987) 190 Cal.App.3d 248, 258.) It also includes the force used to accomplish 'the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act.' (*Ibid.*)" (*Thomas*, *supra*, 15 Cal.App.5th at p. 1071.) The *Thomas* court could not have anticipated or intended that a single sentence about what force "also includes" would be taken out of context, modified, and grafted onto a pattern jury instruction.

The resulting instruction, based on incomplete language taken from *Thomas*, is inconsistent with the "original usage" of that very language in *Thomas*. (See *Colantuono*, *supra*, 7 Cal.4th at p. 221, fn. 13.) The *Thomas* court correctly described that to find the defendant guilty of forcible sexual penetration, "[t]he jury had to find beyond a reasonable doubt [the] defendant used 'enough physical force to overcome the other person's will.' " (*Thomas*, *supra*, 15 Cal.App.5th at p. 1071.) It then specified two types of circumstances that fall under the general definition of force: those "where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude," and those where the victim's body is moved to accomplish the act. (*Ibid.*) In either circumstance, the jury would have to find the force used was sufficient to overcome the victim's will.

Here, the jury was instructed that counts 1 and 2 required the use of "enough physical force to overcome the [victim's] will" and "[f]orce also includes the physical

9

movement and positioning of the [victim's] body to accomplish the act." Without including the intervening sentence from *Thomas* about what force "includes," the special instruction stating what force "also includes" was not merely ambiguous, it was misleading. Its use of the word "also" implicitly juxtaposes "the physical movement and positioning of the [victim's] body" with the use of "enough physical force to overcome the [victim's] will." That juxtaposition incorrectly suggests that if the jury finds force based on "movement and positioning" of the victim's body, the jury need not also find that the force was sufficient to overcome the victim's will.

The Attorney General describes defendant as arguing "that there is a reasonable likelihood that the jury would have understood the instruction to mean that they did not have to make a finding on whether [defendant] used force, in violation of his federal constitutional rights." But we understand defendant to argue only that the instruction incorrectly modified the definition of force, not that the instruction removed the force element entirely. While we agree with the Attorney General that the "jury would have understood that it needed to find [defendant] used force in order to convict," the critical problem is that the modified instruction defined the conduct which could satisfy that element too broadly. The jury's implicit finding that defendant used force cannot cure the error because it was based on an incorrect definition of that term.

### 2. The Error was Prejudicial as to Counts 1 and 2

The parties disagree about the applicable standard to assess the effect of the instructional error. "When the jury is 'misinstructed on an element of the offense ... reversal ... is required unless we are able to conclude that the error was harmless beyond a reasonable doubt.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 348; *Chapman v. California* (1967) 386 U.S. 18, 24.) We agree with defendant that the *Chapman* standard applies because the special instruction caused the jury to be misinstructed on the force element of counts 1 and 2. In the related context of an omitted element the Supreme Court has observed, "our task in analyzing the prejudice from the

10

instructional error is whether any rational fact finder could have come to the *opposite* conclusion." (*People v. Mil* (2012) 53 Cal.4th 400, 418.)

The error was prejudicial as to counts 1 and 2. The Attorney General argues that there was "no basis for the jury to conclude that the acts occurred, but were not forcible, as [defendant] contends." But there was no physical evidence supporting Doe's allegations because the charged offenses occurred two years before she reported them. And Doe did not testify that defendant threatened her or struck her during the incident. The evidence supporting the force element was that defendant removed Doe's clothing and positioned her body to facilitate sex acts. We emphasize that the evidence would be sufficient to support a guilty verdict *by a properly instructed jury*. But a properly instructed jury could also conclude that defendant did not use enough physical force to overcome Doe's will.

The prosecutor amplified the prejudicial effect of the modified instruction by elaborating on it during closing argument: "Force is the use of enough physical force to overcome the female's will. It goes on. Force also includes the physical movement or positioning of the female's body to accomplish the act. I want you to understand, these are very specific definitions. When we think of force, we think of someone beating someone up or grabbing them and pulling them. It includes a bunch of things in the legal world. It's important to remember that."

The Attorney General contends the error is harmless because "there was ample evidence supporting the prosecution's alternate theory, that appellant used duress to accomplish the acts." The jury was correctly instructed that "[d]uress means a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise." But the Attorney General points to no direct or implied threat by defendant that occurred before the charged conduct. Doe's familial relationship and youth do not, standing alone, support a finding of duress. Although Doe testified that defendant told her not to tell

11

anyone, that did not occur until the morning *after* the incident. On this record, we cannot conclude that the error did not affect the verdict on counts 1 and 2.

### B. SUFFICIENT EVIDENCE OF SEXUAL INTERCOURSE

Defendant argues insufficient evidence supports the convictions on counts 1, 3, and 4. He contends the conduct Doe described—defendant rubbing his penis between her "vagina lips"—does not amount to sexual intercourse as that term has been interpreted in California Supreme Court decisions. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We do not reweigh evidence or second-guess credibility determinations. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) We presume the existence of every fact that the trier of fact could reasonably deduce from the evidence to support the judgment. (*Ibid.*) To overturn a conviction based on insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

To prove counts 1, 3, and 4, the prosecution had to prove defendant had "sexual intercourse" with Jane Doe. That phrase is not defined in the three Penal Code sections that form the basis for the challenged counts. (§§ 261, 261.5, 285.)

Section 263 states, "Any sexual penetration, however slight, is sufficient to complete the crime" of rape. The phrase "sexual penetration" has long been interpreted in the context of rape to mean that "[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232, disapproved on another ground by *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8; accord, *People v. Dunn* (2012) 205 Cal.App.4th 1086,

12

1097 [relying on *Karsai* to find that sexual intercourse requires proof of "penetration of [the victim's] labia majora, not her vagina"].)

Consistent with those authorities, the jury was instructed that "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." Doe testified that defendant rubbed his penis in between her "vagina lips" and she could feel his penis spread them apart. That testimony provides sufficient evidence to support his conviction.

Defendant notes that the California Supreme Court has sometimes referred to the penetration necessary to support rape as "vaginal penetration." (*People v. Holt* (1997) 15 Cal.4th 619, 676; see also *People v. Stitely* (2005) 35 Cal.4th 514, 554–555.) But those opinions did so in the context of differentiating between rape and sodomy. For example, the defendant in *Holt* argued the jury instructions "did not inform the jury that the penetration required was penetration of the vagina and the jury might have believed that anal penetration was sufficient." (*Holt*, at pp. 675–676.) In rejecting that argument, the Supreme Court concluded "there is no possibility that the jury did not understand that in the court's instruction on rape, the intercourse to which the instruction referred required penetration of the victim's vaginal genitalia." (*Id.* at p. 677; accord, *Stitely*, at pp. 554–555 ["defendant could not have been convicted of nonconsensual sexual intercourse and rape based on anal penetration used to prove sodomy."].) The *Holt* court did not purport to narrow the definition of "sexual intercourse" to include only vaginal penetration. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered."].) Nor could it, as the Legislature has stated in section 263 that any sexual penetration is sufficient to complete the crime of rape.

## C. UNCHARGED ACTS EVIDENCE (EVID. CODE, §§ 1108, 1101)

The prosecution moved in limine to admit evidence of two uncharged acts involving defendant and Doe under Evidence Code sections 1108 and 1101, subdivision

13

(b).  Defense counsel objected, arguing the uncharged acts were too dissimilar to the charged acts and were unduly prejudicial.  The trial court granted the prosecution's motion and allowed Doe to testify about the two uncharged acts.  We review the trial court's decisions on admissibility for abuse of discretion.

### 1.  Admissibility Under Evidence Code Section 1108

Evidence Code section 1108 provides an exception to the general rule that "evidence of a person's character or a trait of his or her character ... is inadmissible when offered to prove his or her conduct on a specified occasion."  (Evid. Code, § 1101, subd. (a).)  Evidence that a defendant committed a sexual offense is admissible character evidence when the defendant is accused of a sexual offense, so long as the evidence is not made inadmissible by Evidence Code section 352.  (Evid. Code, § 1108, subd. (a); Evid. Code, § 352 [trial court has discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."].)

A trial court "must engage in a careful weighing process" when determining whether to admit evidence under Evidence Code section 1108.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 916–917 (*Falsetta*).)  "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense."  (*Falsetta*, at p. 917.)

14

Multiple factors support the trial court's decision to admit testimony about the casino hotel incident during which defendant allegedly grabbed Doe's hand and placed it on his penis over his clothes. The incident bore some similarity to the charged offenses in that it involved the same victim and consisted of defendant moving Doe to facilitate activity of a sexual nature. The uncharged act did not involve conduct substantially more prejudicial than the charged counts. The risk of distracting the jury and the burden of defending against the uncharged offense were low because that portion of Doe's testimony was limited to a small number of questions. Although we acknowledge that the uncharged offense was somewhat remote in that it occurred about nine years before the charged offenses, that factor alone does not make the evidence inadmissible.

Defendant argues the uncharged act was too speculative to be used to prove defendant was predisposed to commit sex acts against Doe. His argument is based on Doe's testimony that she did not disclose the casino hotel incident earlier because she thought defendant may have mistakenly grabbed her hand. But we review the trial court's decision based on the information it had when it made the decision, not based on testimony adduced after the fact. (See *People v. Williams* (2006) 40 Cal.4th 287, 311 ["we review whether the trial court's decision was correct at the time it was made and not in light of subsequent events."].) We see no abuse of discretion in allowing the testimony.

Defendant contends the trial court should not have allowed testimony about the truck sleeping area incident "because it did not constitute a sexual offense." But defendant did not object on that basis in the trial court. Counsel's objection was that they were dissimilar, unduly prejudicial, "currently uncharged," and "very minor." Defendant has forfeited the argument by not objecting on that basis in the trial court. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592 ["arguments raised for the first time on appeal are generally deemed forfeited."].)

15

Even assuming the issue is cognizable on appeal, we see no error. The "admissibility of uncharged conduct pursuant to [Evidence Code] section 1108 turns on the existence of a preliminary fact—namely, that the uncharged conduct constitutes a statutorily enumerated 'sexual offense.' " (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) "The trial court must make a preliminary determination of whether the proffered evidence is sufficient for the jury to find, by a preponderance of the evidence, that the defendant committed an enumerated offense." (*Ibid*.) We review the trial court's determination of the preliminary fact for abuse of discretion. (*Ibid.*)

"To convict a defendant of violating section 647.6, the prosecution must prove: (1) the defendant engaged in conduct directed at a child; (2) a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; (3) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; and (4) the child was under the age of 18 years at the time of the conduct. It is not necessary that the child actually be irritated or disturbed or that the child actually be touched." (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 50 (*Clotfelter*).)

We see no abuse of discretion in the trial court's determination that the proffered evidence was sufficient for the jury to find, by a preponderance of the evidence, that defendant violated section 647.6. Defendant directed his conduct at Doe, who was a minor. A rational trier of fact could conclude that a person would be disturbed or irritated by someone wrapping his leg and arm over them while holding them close for 20 minutes. A rational trier of fact could also conclude defendant's conduct was motivated by an unnatural or abnormal interest in the child.

Many authorities defendant cites involved challenges to the sufficiency of the evidence to support a section 647.6 conviction beyond a reasonable doubt, not challenges to the admissibility of Evidence Code section 1108 evidence that must be proven by a preponderance of the evidence. We also find the conduct at issue in those cases less

16

troubling than that at issue here.  (E.g., *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1162 [reversing section 647.6 conviction that was based on Valenti hugging a frequent houseguest three times and kissing another on the top of the head once, over the course of several years], superseded by statute, as stated in *People v. Villegas* (2023) 97 Cal.App.5th 253, 281, fn. 9; *Clotfelter*, *supra*, 65 Cal.App.5th at p. 53 [reversing section 647.6 conviction of someone considered a part of the victim's family, reasoning "it was not objectively disturbing within the meaning of section 647.6 for them to be together or exchange e-mails or gifts."].)

### 2.  Admissibility Under Evidence Code Section 1101, Subdivision (b)

Evidence Code section 1101, subdivision (b) makes admissible "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."  "Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent."  (*People v. Carter* (2005) 36 Cal.4th 1114, 1147–1148.)  When introduced so show similar intent, the uncharged crimes need only be sufficiently similar to the charged offenses to support an inference that the defendant likely harbored the same intent in each.  (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

We agree with defendant that the uncharged acts were inadmissible under Evidence Code section 1101, subdivision (b).  Defendant categorically denied engaging in the charged acts.  He did not offer an innocent reason for any actions, which could then be disproven by evidence of uncharged acts to show intent, motive, or absence of

17

mistake. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2 [" 'In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it.' "].)

While we agree there was no permissible Evidence Code section 1101, subdivision (b) purpose for the uncharged acts evidence, we find that its admission did not render defendant's trial fundamentally unfair. We further find the state law error harmless as to counts 3 and 4 after considering whether it is reasonably probable that defendant would have obtained a more favorable result had the objection been sustained. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) As we have explained, the same uncharged acts evidence was admissible under Evidence Code section 1108, such that it was properly before the jury for another purpose. The jury was also instructed that the evidence was "not sufficient by itself to prove that the defendant is guilty of the charged offenses." And Doe's testimony provided credible evidence from which the jury could convict defendant on counts 3 and 4.

## D. EFFECTIVENESS OF TRIAL COUNSEL

Defendant contends his trial counsel rendered prejudicially deficient assistance by not objecting to certain trial evidence. To establish ineffectiveness of trial counsel in violation of a defendant's right to counsel under the Sixth Amendment to the United States Constitution, a defendant must show both that counsel's performance was deficient and that he was prejudiced by the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 (*Ledesma*).) Deficient performance is rarely shown if there was a tactical reason for trial counsel's conduct. (See *People v. Cruz* (1980) 26 Cal.3d 233, 255–256 ["except in rare cases, an appellate court should not attempt to second-guess trial counsel as to tactics"].) The "decision whether to object, move to strike, or seek admonition ... is highly tactical, and depends upon counsel's evaluation of the gravity of the problem and whether objection or other responses would serve only to highlight [it]." (*People v. Catlin* (2001) 26 Cal.4th 81, 165 (*Catlin*).) An attorney does not provide deficient assistance if she fails to make a meritless objection. (*People v. Ochoa* (1998)

18

19 Cal.4th 353, 463 (*Ochoa*).)  To prove prejudice, a defendant must affirmatively show a reasonable probability that, but for trial counsel's errors, the result would have been different.  (*Ledesma*, at pp. 217–218.)

### 1. Pretext Call Evidence

Defendant argues his trial counsel provided ineffective assistance by not objecting to the admission of statements defendant made in two pretext calls.  He contends his statements were irrelevant and unconstitutionally involuntary.

Doe made two pretext phone calls to defendant in October 2021.  Videos of the calls were admitted into evidence and played for the jury.  Two officers were in the room with Doe when she placed the calls.  One of the officers confirmed during his testimony that he wrote Doe notes to encourage her to ask defendant about particular details.

In the first call, Doe asked defendant if he remembered "when you did that to me" at her grandmother's house two years earlier.  Defendant responded, "I know something that happened.  I vaguely remember.  The truth is I was — I was on meth[.]"  Doe stated, "You had sex with me.  Do you remember?"  Defendant responded, "Ah, what?  I don't.  Are you serious?"  Doe later stated, "You had sex with me," and defendant responded, "Nooo."  Defendant stated in response to another question, "Ah, son of a fucking bitch.  What the fuck did I do?"

In the second call, defendant stated that he did not remember hugging Doe.  He remembered that "[y]ou were on the bed.  I was on the floor.  I remember that."  Doe asked, "Do you remember pulling down like, my underwear?"  Defendant responded, "Stop.  I don't wanna hear that shit.  What the fuck?"  He asked how he could help her and she responded, "By saying the truth, because I just wanna know why?"  Defendant stated, "I don't know why.  I don't know how much, I was on — I was blasted with I don't know what.  I don't know what the fuck happened, I don't know what took over me.  I don't know.  And now I - I mean, now that you're telling me, it's like what the fuck?  Now it has to fucking I - I was wonde- I - I don't know.  I don't know what the

19

fuck I'm gonna do. What — what - what can - what can I do? What can I do, what - what." Doe continued asking defendant what he remembered, and he responded that he did not remember anything. Defendant eventually stated, "I'm so sorry (crying). I'm sorry." Defense counsel did not move in limine to exclude the pretext call evidence; counsel did object at trial to admission of the pretext call videos based on lack of foundation, which the trial court overruled.

Involuntary statements obtained by law enforcement are inadmissible under the due process clauses of the state and federal constitutions. (*People v. Dykes* (2009) 46 Cal.4th 731, 752.) Whether a statement is involuntary depends on the totality of the circumstances. (*People v. Williams* (2010) 49 Cal.4th 405, 436.) "The question is whether the statement is the product of an ' "essentially free and unconstrained choice" ' or whether the defendant's ' "will has been overborne and his capacity for self-determination critically impaired" ' by coercion." (*Ibid.*) Relevant considerations include the extent of any police coercion; the length of the interrogation; its location; its continuity; as well as the defendant's maturity, education, physical condition, and mental health. (*Ibid.*)

Reviewing the totality of the circumstances, defendant's statements during the pretext call were not involuntary. We acknowledge that Doe received notes during the call prompting her to ask defendant about certain details of her allegations. But the crucial factor for our analysis is that defendant had no idea law enforcement was involved. The record does not show that his will was overborne merely by Doe asking questions in phone calls while defendant was not in custody. That defendant had no knowledge of law enforcement's involvement distinguishes this case from *Arizona v. Fulminante* (1991) 499 U.S. 279, 283, 287, where a government informant inmate was used to extract a confession from a suspect who was in custody. And because defendant's statements were voluntary, counsel was not deficient for not raising a meritless objection. (*Ochoa*, *supra*, 19 Cal.4th at p. 463.)

20

Defendant argues that in "order to give Doe an answer to her question [about why he did it], [defendant] had to accept the allegations as true." But nothing required defendant to accept Doe's comments as true or to admit any misconduct. Defendant was free to deny all wrongdoing, which he did in large part.

Defendant alternatively contends that "reasonably competent counsel would have moved to sanitize the evidence." Defendant argues his statement near the beginning of the first pretext call that "I know something that happened" was speculative, irrelevant, and unduly prejudicial because it "was made before Doe made the allegation." Defendant made the statement after Doe referred to something that happened two years earlier in her room at her grandmother's house. In that context, defendant's statement was relevant to what occurred on that occasion, and defendant's statement was not unduly prejudicial, as he admitted only that "something" happened. Counsel was not deficient under these circumstances.

Defendant also argues that trial counsel should have moved to exclude his reference to methamphetamine use during the pretext calls as irrelevant and unduly prejudicial. But defendant put his mental state at issue by testifying that he took "five Advil PMs" the night of the charged offenses, and his substance use the same night was relevant to the jury's consideration of his mental state.

### 2. Testimony About Doe's Veracity

Defendant contends his trial counsel was prejudicially deficient for not objecting to testimony by an investigating officer that defendant argues amounted to inadmissible opinion testimony regarding Doe's veracity and defendant's guilt.

To explain why he asked Doe to make the second pretext call, the investigating officer testified, "Based off of how the victim was emotional, I felt that she wasn't lying about what had occurred. [¶] Based off the statement, the long, drawn-out periods and deep breathing from the suspect, it was obvious something had occurred, and that's why I

21

felt it was important to try to do another phone call, if feasible." Defense counsel did not object.

Counsel had a tactical reason to not object so as not to call attention to the statement (*Catlin*, *supra*, 26 Cal.4th at p. 165), which was brief and somewhat ambiguous (referring only to "what had occurred"). The prosecutor did not linger on the subject, instead immediately asking, "And was another phone call done?" The fleeting nature of the officer's statement distinguishes this case from *People v. Sergill* (1982) 138 Cal.App.3d 34, which found prejudicial error in allowing two officers to opine that they believed the complaining witness was truthful in statements to law enforcement. (*Id*. at pp. 38-40.) We also find *People v. Julian* (2019) 34 Cal.App.5th 878, 889 (*Julian*) distinguishable, because there it was defense counsel rather than the prosecutor who asked the officer whether he believed the victim was being honest. And we do not find the isolated statement so severe as to violate defendant's federal constitutional rights to due process, an impartial jury, or a reliable verdict.

## E. EXPERT EVIDENCE ON THE PSYCHOLOGY OF CHILD SEX ASSAULT VICTIMS

The trial court denied defendant's in limine motion to exclude expert testimony by a clinical psychologist about the "psychology of a child sexual assault victim in general." (We note that neither the prosecutor nor the witness used the term "Child Sexual Abuse Accommodation Syndrome" in front of the jury, though the witness described consistent concepts, such as delayed reporting.) We review a trial court's decision to admit expert testimony for abuse of discretion. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299–1300 (*McAlpin*).)

### 1. The Expert's Testimony was Admissible

The Evidence Code provides that expert testimony is admissible if it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact" and is "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the

22

witness or made known to him at or before the hearing." (Evid. Code, § 801, subds. (a), (b).) Defendant argues that testimony about the psychology of child sex assault victims generally should be inadmissible because it is unreliable and unduly prejudicial. In *McAlpin*, the Supreme Court reviewed a challenge to expert testimony about "whether a parent might not report a known child molestation, and if so, why." (*McAlpin, supra,* 53 Cal.3d at p. 1298.) Finding no abuse of discretion, the Supreme Court analogized the challenged testimony "to expert testimony on common stress reactions of children who have been sexually molested ('child sexual abuse accommodation syndrome'), which also may include the child's failure to report, or delay in reporting, the abuse." (*Id.* at p. 1300.) The *McAlpin* court noted that several decisions from the courts of appeal had found that while "expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*Ibid.*)

Relying on decisions from courts in other states, defendant asks us to find expert testimony of the type provided in this case inadmissible for all purposes as a matter of law. (E.g., *Blount v. Commonwealth* (Ky. 2013) 392 S.W.3d 393, 396; *State v. Ballard* (Tenn. 1993) 855 S.W.2d 557, 562.) But to the extent the California Supreme Court expressly approved the admissibility of such evidence in *McAlpin*, we are bound by that precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Defendant acknowledges that California appellate courts have consistently found expert testimony like that provided here admissible under *McAlpin*. (See *People v. Ramirez* (2023) 98 Cal.App.5th 175, 219–220 (*Ramirez*); *People v. Munch* (2020) 52 Cal.App.5th 464, 468 (*Munch*); *People v. Lapenias* (2021) 67 Cal.App.5th 162, 172 (*Lapenias*).) Defendant's out of state authorities offer no compelling reason to depart from California precedent.

23

## 2. No Due Process Violation

Defendant argues admitting the expert testimony violated his constitutional due process rights "because it allowed the jury to make the unreasonable inferences that, because Doe behaved in the way molestation victims do, as described by [the clinical psychologist], she was molested, and her testimony was credible." But the expert made clear that he had not reviewed any evidence about defendant's case and had formed no opinion on whether Doe was assaulted. The jury was properly instructed that "testimony about the psychology or behavior of child sexual abuse victims in general is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged." (See CALCRIM No. 1193.) Multiple courts have held that CALCRIM No. 1193 accurately informs the jury on the limited use of child psychology evidence and does not: "(a) improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony; (b) violate due process; or (c) misapply the burden of proof." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 175, citing *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504; accord, *Munch*, *supra*, 52 Cal.App.5th at pp. 473–474; *Ramirez*, *supra*, 98 Cal.App.5th at pp. 219–220.) Nothing in the record here suggests the jury nonetheless misunderstood or misapplied the instruction as given.

## 3. Counsel's Performance was Not Prejudicially Deficient

Defendant argues his trial counsel was ineffective for eliciting damaging testimony from the prosecution's expert during cross-examination in the following exchange. Defense counsel: "And do you have any experience with children that were not sexually abused but said they were?" Psychologist: "False allegations of sexual abuse? Certainly." Defense counsel: "So that does occur?" Psychologist: "False allegations of sexual abuse are uncommon, rare, but they do occur."

Defendant argues trial counsel performed deficiently because "expert opinion testimony stating that false accusations are 'rare' and 'uncommon' can only be harmful to appellant's defense." But the expert's testimony also informed the jury that false

24

allegations of sexual abuse "[c]ertainly" occur, even if they are uncommon or rare. Trial counsel therefore had a tactical reason for asking questions that introduced the jury to the concept of false allegations.

Even if we were to assume that counsel's performance was deficient, defendant has not demonstrated prejudice as to counts 3 and 4. The expert's testimony about the rarity of false allegations was brief. The lawyers did not focus on that testimony during closing argument. The expert made clear he had no opinion about the specific facts of the case. The jury was instructed about the limited admissibility of the expert's testimony. (See CALCRIM No. 1193.) And Doe's testimony provided credible evidence from which the jury could convict defendant of counts 3 and 4. (See *Lapenias*, *supra*, 67 Cal.App.5th at p. 180 ["we find it is not reasonably probable Lapenias would have received a more favorable result in the absence of [the expert's] erroneously admitted testimony about the rarity of false allegations of child sexual abuse"].) The limited nature of the testimony distinguishes this case from those finding reversible error. (*Julian*, *supra*, 34 Cal.App.5th at p. 886 [testimony that "92 to 99 percent" of child sex abuse claims are true]; *People v. Wilson* (2019) 33 Cal.App.5th 559, 570 ["testimony had the effect of telling the jury there was at least a 94 percent chance that any given child who claimed to have been sexually abused was telling the truth"].)

## F. NO CUMULATIVE PREJUDICE

"Lengthy criminal trials are rarely perfect," and a judgment will not be reversed "absent a clear showing of a miscarriage of justice." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) "Nevertheless, a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*Ibid*.) We have discussed two arguable evidentiary errors: the inadmissibility of uncharged acts under Evidence Code section 1101, subdivision (b), and defense counsel's eliciting expert testimony that false child sex abuse allegations are rare.

25

Even considered together, we find those errors were not cumulatively prejudicial as to counts 3 and 4.

### III.    DISPOSITION

The judgment is reversed and the matter is remanded for possible retrial on counts 1 and 2 and resentencing.

_____
Grover, J.

**WE CONCUR:**


_____
Greenwood, P. J.


_____
Lie, J.


H050387
*People v. Melgoza*

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Case No.: 21CR008177 |
| Trial Judge: | Hon. Rafael Vazquez |
| Attorneys for Plaintiff/Respondent<br>The People: | Rob Bonta<br>  Attorney General<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Assistant Attorney General<br>Katie Stowe<br>  Deputy Attorney General<br>Alisha M. Carlile<br>  Deputy Attorney General<br>for Plaintiff and Respondent. |
| Attorneys for Defendant/Appellant<br>Carlos Sepulveda Melgoza: | Julie Caleca,<br>  under appointment by the Court of Appeal,<br>  for Defendant and Appellant |